The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
****************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
All parties are properly before the North Carolina Industrial Commission and are subject to the jurisdiction thereof.
An employer-employee relationship existed between plaintiff and defendant at the time of the alleged injury by accident/occupational disease.
The plaintiff has not worked with or for defendant since 1 September 1993.
Plaintiff's average weekly wage was $370.86 which yields a compensation rate of $247.24.
The following records are authentic and genuine:
a. Industrial Commission Form 22
b. Plaintiff's Attendance Record for 1993 with attachments
c. Employee Incident report dated 18 August 1993
d. Medical records from Dr. Fedder
e. Industrial Commission Form 25R dated 6 May 1994.
A videotape depicting the activities and duties of plaintiff's job which was prepared by the employer is admitted into evidence and made a part of the record.
The issues to be determined by the Commission are as follows:
 a. Does plaintiff suffer from any compensable occupational disease(s) as defined by N.C. Gen. Stat. § 97-53(13) as a result of his employment with defendant?
 b. What compensation, if any, is plaintiff entitled as a result of his alleged occupational disease(s)?
 c. Whether the plaintiff's current disability is a result of his alleged occupational disease(s)?
****************
The Full Commission rejects the findings of fact found by the deputy commissioner and finds as follows:
FINDINGS OF FACT
Plaintiff's date of birth is 15 September 1949. He completed the tenth grade of high school and has a GED.
Plaintiff's prior work history consisted of working in the textile industry and cotton mills. Prior to working for the defendant, plaintiff had been employed at Avondale Mills as a card operator. His duties at Avondale Mills included cleaning and doffing the machines.
Plaintiff's prior medical history included a report of shoulder pain while he was employed at Avondale Mills. The pain persisted for three to four months. Plaintiff was given physical therapy and the pain resolved. This episode of shoulder pain occurred approximately one year prior to plaintiff beginning work with defendant.
Plaintiff began his employment with defendant on 18 March 1993 as a warehouseman. His job duties included unloading raw material from trucks, weighing the raw material and cutting metal bands from the bales of fiber.
The process of weighing the material and cutting the bands from the bales of fiber is call a "laydown". In order to perform a laydown, plaintiff would bump four-feet tall bales of fiber with his shoulder to get them off balance and to start the bales rocking. The bales weighed between 300 and 500 pounds. Then plaintiff would use his hands, arms and shoulders to move the bales the necessary distance by pushing and rocking them along. Once in place the plaintiff would use his hands and shoulders to tip the bale over onto its side. Thereafter, plaintiff used bolt cutters to cut the metal band off the bales by applying pressure with his hands to squeeze the bolt cutters until the wire was cut. The bolt cutters weighed six to eight pounds and there were eight metal bands on each bale.
Each laydown consisted of 48 bales. Plaintiff would perform two laydowns each day and on some days plaintiff would perform as many as three laydowns. During the laydown plaintiff would use the bolt cutters to cut six of the eight metal bands on each bale. The average number of bands cut during a laydown would be 288. On most days plaintiff would cut 576 metal bands with the bolt cutters and on days when he did three laydowns, plaintiff cut approximately 864 metal bands.
Around the end of May to early June 1993 plaintiff began to experience tingling and numbness in his hands. By 5 July 1993, plaintiff was feeling pain in his hands, wrists and shoulders. He reported that he was in pain to his supervisor, David Flannagan.
Kay Gladden is the personnel manager and coordinator of workers' compensation activities at defendant company. Plaintiff reported that he was in pain to Ms. Gladden in August 1993. Ms. Gladden told plaintiff that she did not think that plaintiff's pain problems were compensable because he did not describe an accident or injury arising out of the employment and because she knew about his prior problems with bursitis. Consequently, she did not file a Form 19 regarding plaintiff's complaints at that time.
Plaintiff began to see Dr. David P. Fedder, an orthopaedic surgeon, in July 1993 on a self-referral because of his persistent pain problems. He initially complained about neck and shoulder pain, and related to Dr. Fedder that he was injured at work although he was vague as to how he injured himself. Subsequent testing revealed that plaintiff was suffering from bilateral carpal tunnel syndrome, with the left hand worse than the right, and rotator cuff tendinitis or impingement syndrome of both shoulders, with the right shoulder being worse than the left. Testing also revealed that there were some degenerative changes at the AC joint in both of plaintiff's shoulders.
Dr. Fedder performed carpal tunnel release surgery on plaintiff's left hand on 1 September 1993. Several weeks prior to the surgery, plaintiff reported to Ms. Gladden that he had been diagnosed with carpal tunnel syndrome, and thereafter Ms. Gladden filed a Form 19.
Plaintiff had carpal tunnel release surgery on his right hand on 6 October 1993. Dr. Fedder tried conservative treatment for plaintiff's shoulder problems, but ultimately decided to perform a right shoulder decompression on 9 December 1993 and a left shoulder decompression on 10 February 1994. Dr. Fedder noted a small rotator cuff tear in plaintiff's left shoulder which was repaired during this operation.
Dr. Fedder opined that plaintiff reached maximum medical improvement of his hands and right shoulder on 3 May 1994. Plaintiff reached maximum medical improvement of his left shoulder on 24 May 1994. Dr. Fedder also recommended that plaintiff have a permanent restriction of no persistent overhead activity.
There is no evidence that plaintiff made reasonable efforts to find suitable employment after he reached maximum medical improvement even though his only restriction was to avoid persistent overhead activity. Plaintiff has not proven by the greater weight of the evidence that he remained disabled after 24 May 1994.
Dr. Fedder opined that plaintiff retained a 10% disability of each hand, a 10% disability of the right shoulder, and a 15% disability of the left shoulder. Plaintiff was released from Dr. Fedder's care on 6 September 1994 with instructions to return as needed.
After viewing a videotape of the activities plaintiff had to perform on his job, Dr. Fedder opined that those activities performed for a long enough period of time could cause carpal tunnel syndrome and rotator cuff problems. He also opined that those activities stressed the carpal tunnel and rotator cuff of someone who performed these duties more than of someone who didn't perform those activities.
Defendant retained Dr. George S. Edwards, Jr., an orthopaedic surgeon, for a second opinion. Dr. Edwards did not personally examine plaintiff but reviewed his medical records and viewed the videotape of plaintiff's job activities. Based on his viewing of the videotape, Dr. Edwards initially opined that he did not see any concrete evidence that plaintiff's carpal tunnel syndrome and shoulder problems were caused by his job, mainly because he felt that the job did not involve repetitive activities and because plaintiff had not been working at the job for a sufficient enough time to allow for the development of these problems. However, he also noted that rotator cuff injuries can occur in a little as four months, and that plaintiff's job could have aggravated any pre-existing problems.
The repetitive trauma to plaintiff's hands while pushing 96 — 144 bales daily weighing 300 — 500 pounds and while squeezing bolt cutters to cut 576 — 864 metal bands per day at work caused plaintiff's bilateral carpal tunnel syndrome. Plaintiff's job exposed him to a greater risk than the general public of contracting bilateral carpal tunnel syndrome.
The repetitive trauma to plaintiff's shoulder caused by using his shoulders to bump, rock, and push bales weighing 300 — 500 pounds 98 to 144 times per day either caused his rotator cuff tendinitis or impingement syndrome of his shoulders, or aggravated his pre-existing shoulder problems. Plaintiff's job placed him at a greater risk than the public in general of contracting rotator cuff tendinitis or impingement syndrome, or of aggravating a pre-existing shoulder condition.
Plaintiff has established by the greater weight of the evidence that he contracted from this employment bilateral carpal tunnel syndrome and rotator cuff tendinitis or impingement syndrome of his shoulders, both of which are occupational diseases within the meaning of N.C. Gen. Stat. § 97-53(13).
*******************
Based upon the foregoing stipulations and findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
Plaintiff's bilateral carpal tunnel syndrome and rotator cuff tendinitis or impingement syndrome of the shoulders are diseases which are due to causes and conditions characteristic of and peculiar to his employment with defendant and are not ordinary diseases of life to which the general public is equally exposed outside the employment. Said diseases are compensable occupational diseases within the meaning of N.C. Gen. Stat. § 97-53(13).
As a result of his occupational diseases, plaintiff was incapable of earning the same or greater wages in the same or any other employment from 1 September 1993 through 24 May 1994 and is therefore entitled to temporary total disability compensation during said period.
Plaintiff reached maximum medical improvement on 24 May 1994 and thereafter made no reasonable efforts to find suitable employment. Plaintiff has not proven by the greater weight of the evidence that he was disabled after 24 May 1994.
Plaintiff is entitled to permanent partial impairment benefits for the 10% permanent partial impairment of each hand, the 10% permanent partial impairment of his right shoulder and the 15% permanent partial impairment of his left shoulder.
Plaintiff is entitled to payment by defendant for all medical treatment incurred or to be incurred as a result of his occupational diseases. N.C. Gen. Stat. § 97-25.
*************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
Subject to counsel fees, defendant shall pay plaintiff in one lump sum, uncommuted, temporary total disability compensation at the rate of $247.24 per week from 1 September 1993 through 24 May 1994.
Subject to counsel fees, defendant shall pay to plaintiff in one lump sum, uncommuted, permanent partial disability compensation at the rate of $247.24 per week for 20 weeks for the ten percent (10%) permanent partial impairment to plaintiff's left hand; $247.24 per week for 20 weeks for the ten percent (10%) permanent partial impairment to plaintiff's right hand; $247.24 per week for 24 weeks for the ten percent (10%) permanent partial impairment to plaintiff's right shoulder; and $247.24 per week for 36 weeks for the fifteen percent (15%) permanent partial impairment to plaintiff's left shoulder.
A reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation due plaintiff herein is approved for plaintiff's counsel. Said attorney's fee shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel.
Defendant shall pay medical expenses incurred or to be incurred by plaintiff as a result of his occupational diseases when bills for same have been submitted and approved through procedures adopted by the Industrial Commission.
Defendant shall pay the costs due this Commission.
 S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
S/ _________________ J. RANDOLPH WARD COMMISSIONER
BSB:be